UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-23461-CIV-O'SULLIVAN

[CONSENT]

LYNTON McNEAL-HAIR,

      Plaintiff,

v.

RAY LaHOOD, SECRETARY,
UNITED STATES DEPARTMENT OF
TRANSPORTATION,

      Defendant.

                        /

## ORDER

THIS MATTER is before the Court on the Defendant's Motion for Summary

Judgment and Supporting Memorandum of Law (DE# 19, 12/13/12). Having reviewed

the motion, the response, the reply and evidence in the record as well as applicable

law, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary

Judgment and Supporting Memorandum of Law (DE# 19, 12/13/12) is GRANTED for

the reasons set forth below.

## BACKGROUND

The plaintiff, Lynton McNeal-Hair, a former Developmental Air Traffic Control

Specialist ("DATCS"), employed by the United States Department of Transportation

("DOT"), Federal Aviation Administration ("FAA"), alleges that he was subjected to

wrongful discrimination based upon his race and/or national origin when his DATCS

training was suspended and this DOT/FAA employment was terminated in 2010. The

plaintiff seeks compensatory damages as well as injunctive relief.

## FACTS

The DOT operated an Air Route Traffic Control Center ("ARTCC"), which was also known as the "Miami Center" and/or "ZMA." The ARTCC is a facility responsible for controlling aircraft en route in a particular volume of airspace at high altitudes between airport approaches and departures. A Certified Professional Controller ("CPC") in an ARTCC is responsible for the safe, orderly and expeditious flow of air traffic. A CPC-in-training/Developmental Air Traffic Controller is required to complete several stages of training, depending upon the category and complexity of the facility. At all training and developmental levels, employees must learn the skills needed for operation at higher levels of responsibility to become a CPC. The pertinent training and certification requirements are set forth in the Miami Center Air Traffic Technical Training Program Order, ZMA 3120.21P, Chapter 2.

The FAA's letter to the plaintiff that extended a "firm employment offer" for the position of Air Traffic Control Specialist, FG-2152-01, explained that it was a temporary appointment and that he would be "in a developmental training status until [he] attain[s] Certified Professional Controller Status .... As a condition of continuing employment, [he] will be required to successfully complete air traffic controller training and obtain facility ratings within uniformly applicable time limits. Failure to do so will result in separation from the FAA." See Sonnhalter Declaration.

On May 8, 2009, the plaintiff was hired as an Air Traffic Control Specialist (in training) and his organizational title was Developmental Air Traffic Controller. He successfully completed Stage I training at the FAA Academy between his hire date and

2

mid-September 2009.  Based on his successful completion of FAA Stage I training, the plaintiff's employment position was converted into a permanent position (as an Air Traffic Control Specialist (En Route)), AT-2152-KC.

On October 1, 2009, as part of his FAA Stage II training at the Miami Center facility, the plaintiff took the Center Map Knowledge test, 1-5.  His initial scores were 46, 73, 2, 56, and 58, none of which were a passing score.  On October 29, as part of his FAA Stage II training, the plaintiff re-took the Center Map Knowledge test, 1-5.  His scores were 92%, 79%, 67%, 96, and 89% (failing 3 of 5).  On November 2, 2009, as part of his FAA Stage II training, the plaintiff re-took the Center Map Knowledge test, 2, 3, and 5.  His scores were 99%, 95% and 95% (passing all).  On November 13, 2009, as part of his FAA Stage II training, the plaintiff took the Area Map Knowledge test, 1-3. His scores were 97%, 90%, and 86% (failing 1 of 3).  On November 17, 2009, as part of his FAA Stage II training, the plaintiff re-took the Area Map Knowledge test and passed with a score of 97%.  As part of his FAA Stage II training, the plaintiff began A-side training and was A-side certified on November 25, 2009.

On January 25, 2010, Terry Van Dyne replaced Ken Thomas as the Air Traffic Manager, Miami Center (ARTCC).  On January 25, 2010, the plaintiff was assigned to Simulation-Preparation Training.  He began his FAA Stage III academic training on February 1, 2010.  On February 10, 2010, he took and passed his Area Maps tests (1-3) with scores of 96%, 95%, and 93%.  That same day he took and passed his Video Map Training Sector exam with a perfect score.  On February 22, 2010, the plaintiff began his FAA Stage III simulation training.  On March 9, 2010, as part of his FAA Stage III training, the plaintiff was evaluated and failed the area of Separation test (75%

3

complexity level).

On March 10, 2010, Michael Walborn, Support Manager, Training, notified the plaintiff by memorandum of his unsatisfactory performance; authorized the plaintiff an additional two (2) DYSIM skill enhancement scenarios with emphasis placed on separation; and explained that he would then be re-administered a 75% Performance Verification ("PV") scenario.  Mr. Walborn further advised that he and his training staff will be available during the notice period to assist the plaintiff in bringing his performance up to a satisfactory level.  The memorandum warned that "[f]ailure to successfully complete PV Scenario could result in suspension of your training and processing in accordance with appropriate Agency directives."  Walborn deposition, page 130-43 (D's Ex. #6 & #7) and Van Dyne Declaration. After being provided with two Skill Enhancement Sessions and one "Re-Fam/Spool Up" opportunity, the plaintiff was re-evaluated and again failed the area of Separation test. The plaintiff challenged the defendant's determination that he failed his Performance Verification tests.  Walborn Depo. , p. 55, 1; page 63, 1, 21-25; page 98, 1, 9-25; page 99. (DE# 21-1).

On March 18, 2010, Terry Van Dyne, Miami Center acting Air Traffic Manager suspended the plaintiff's training for his failure to successfully complete the area of Separation at the seventy-five percent (75%) complexity evaluation level.  Support Manager Walborn notified the plaintiff in writing.  On March 18, 2010, the plaintiff was assigned to PIT/AMIS training pending the decision of the Air Traffic manager regarding his separation from the FAA. On March 25, 2010, acting Air Traffic Manager Van Dyne notified the plaintiff by memorandum that his training was terminated for his failure to successfully progress the area of Separation at the seventy-five percent (75%)

4

evaluation level.  The plaintiff provided a written response to the notice that his training was terminated to acting Air Traffic Manager Van Dyne on April 12, 2010.   On June 23, 2010, acting Air Traffic Manager Van Dyne notified the plaintiff by letter of his proposal to remove the plaintiff from his position of Air Traffic Control Specialist at the Miami ARTCC for failure to satisfactorily complete the Air Traffic Control Specialist Training Program.  On June 28, 2010, the plaintiff submitted a written reply to the proposed removal to Eric Fox, the new Miami Center Air Traffic Manager.  On August 3, 2010 Miami Center Air Traffic manager Fox notified the plaintiff by letter than he would be removed for his failure to satisfactorily complete the area of Separation at the seventy-five percent (75%) complexity evaluation level of the ATC Speciality Training Program. On August 6, 2010, the plaintiff was removed from his FAA employment.

Raymond Lorenz and Les Crowe each successfully completed the Stage III (and Stage IV) Radar Controller Simulation PV administered at the 75% level and were moved to On the Job Training ("OJT") in the operational environment of the Miami Center where additional training opportunities were available to them.

## DISCUSSION

In the Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (DE# 19, 12/13/12), the defendant seeks judgment as a matter of law on the plaintiff's Complaint.  The issues are whether the defendant wrongfully discriminated against the plaintiff by suspending his training and terminating his employment with the FAA as a DATCS at the Miami ARTCC and whether the defendant has articulated legitimate nondiscriminatory reasons for the challenged employment decisions.

I.      **Standard of Review on Motion for Summary Judgment**

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56( c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party bears the burden of meeting this exacting standard.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).  In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994); Sheckells v. Agv-Usa Corp., 987 F.2d 1532, 1534 (11th Cir. 1993); Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990); Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982); Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)(per curiam). Summary judgment is appropriate when there is no dispute as

6

to any material fact and only questions of law remain.  Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).  If the record presents factual issues, the court must deny the motion and proceed to trial.  Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial.  Celotex, 477 U.S. at 322-323.  Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court noted in Celotex,

> [T]he plain language of Rule 56( c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  There must be evidence on which the jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 251; Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## II.   Analysis

### A.   Race Discrimination

Title VII prohibits an employer from discharging or otherwise discriminating against a person based on the person's race, color, religion, sex, or national origin, or

retaliating against an employee for reporting discrimination.  See 42 U.S.C. § 2000e, *et seq*.  The Eleventh Circuit evaluates Title VII discrimination claims supported by circumstantial evidence under the McDonnell Douglas framework established by the Supreme Court.  Burke-Fowler v. Orange County, Florida, 447 F.3d 1319 (11th Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973));Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000). "To establish a prima facie case for disparate treatment in a discrimination case, the plaintiff must show that (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." Burke-Fowler, 447 F.3d at 1323 (citing EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000)); Knight v. Baptist Hospital of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).  "If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action." Id.  "If it does so, then the plaintiff must prove that the reason provided by the defendant is pretext for unlawful discrimination."  Id.

The plaintiff contends that the defendant is liable for disparate treatment discrimination.  In his Response, the plaintiff asserts that there were similarly situated employees who were treated more favorably because no other trainee at Miami ARTCC has ever been terminated without being granted a review board, additional training opportunities or without being given other opportunities to continue employment with the defendant; 2) the defendant's argument that the plaintiff's failure to pass D-Side Simulation Training set him apart from all other asserted comparators created a "false

8

premise that the level of training creates a distinction amongst the developmental trainees;" and 3) despite his En Route ATCS training failures and suspension, his subsequent assignment to, and training in, the Transportation Management Unit ("TMU") was tantamount to official recognition that the plaintiff was qualified as a certified professional controller.  Additionally, the plaintiff contends that the defendant's non-discriminatory reasons for the challenged employment decisions were pretext because they violate Article 67 of the Collective Bargaining Agreement ("CBA").

The plaintiff has satisfied the first two elements of the <u>McDonnell Douglas</u> framework.  The third and fourth elements are at issue.  The defendant contends that the fourth element, whether the plaintiff was qualified to do the job, is an issue that is better resolved in the context of the Court's evaluation of whether the employer's proffered non-discriminatory reasons for an adverse employment action is pretext.  <u>See Capp v. City of Miami Beach</u>, 242 F.3d 1017, 1020 (11th Cir. 2001).

Summary judgment is warranted on the plaintiff's race discrimination claim (Count I) because: 1) the plaintiff failed to establish a *prima facie* claim of discrimination; and 2) even if the plaintiff could show a *prima facie* claim of discrimination, the plaintiff failed to prove that the non-discriminatory reasons provided by the defendant are pretext for unlawful discrimination or do not warrant credence.

        1.    <u>Plaintiff Failed to Establish a *Prima Facie* Claim of Discrimination</u>

        a.    <u>Comparators Not Similarly Situated</u>

The plaintiff failed to specifically identify any employees – not of his race classification – who were treated differently based on nearly identical conduct as is required to state a *prima facie* claim of disparate treatment. <u>Maniccia v. Brown</u>, 171

9

F.3d 1364, 1367 (11th Cir. 1999); Escarra v. Regions Bank, No. 09-11073, 353 F. App'x 401, 404 (11th Cir. 2009).  In Brown, the Eleventh Circuit affirmed summary judgment in favor of the employer.  The Eleventh Circuit explained that  "'[i]n determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Brown, 171 F.3d at 1368 (quoting Jones v. Bessmer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir.), opinion modified by 151 F.3d 1321 (1998) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).  "'The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.'" Id. (internal quotations and citations omitted).  The Eleventh Circuit "requires that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (citation omitted).

The plaintiff relies on Lathem v. Dep't. of Children and Youth Services, 172 F.3d 786, 793 (11th Cir. 1999), which is factually distinguishable.  In Lathem, two employees engaged in the same conduct, having relationships with minor clients and failing to cooperate with subsequent investigations.  One employee was transferred, the other employee was terminated.  At trial, the defendant argued that it subjected the two employees to different work rules and alternatively, that it did not treat the employees differently.  The district court refused to grant the defendant's motion for summary judgment and the Eleventh Circuit affirmed.  Unlike Lathem, the plaintiff in this case has failed to provide a comparator who twice failed the performance test as the plaintiff did.

Interestingly, the plaintiff cites <u>Burke-Fowler</u>, which actually supports the defendant's position that the plaintiff has failed to provide appropriate comparators.  <u>Burke-Fowler</u>, 447 F.3d at 1325.  The Eleventh Circuit does not support the plaintiff's arguments that the comparators present a fact question that precludes disposition on summary judgment.  <u>See</u> <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997); <u>see also</u>  <u>Horn v. United Parcel Services, Inc.</u>, 433 Fed. App'x 788, 794 (11th Cir. 2011) .

The plaintiff failed to show that any similarly situated employee was treated more favorably.  In his Response to Defendant's Supplemental Interrogatories, the plaintiff identified five individuals whom he claimed were similarly situated to him, but who were treated more favorably.  The five individuals were: 1) Raymond Lorenz, 2) Les Crowe, 3) Oscar (last name unknown), 4) white female (first and last name unknown) and 5) Carlos (last name unknown).  Of the five individuals, only two, Raymond Lorenz and Les Crowe, were in the same Class #10-04 with the plaintiff for simulation training.   It is undisputed that Raymond Lorenz and Les Crowe each successfully completed the Stage III (and Stage IV) Radar Controller Simulation Performance Verification ("PV") administered at the 75% level and were moved ("promoted") to On the Job Training ("OJT") in the operational environment of the Miami Center where additional training opportunities were available to them under Chapter 2, Section 2 of ZMA 3120.21P (governing OJT).  Because the plaintiff does not controvert this, the plaintiff concedes that he was not similarly situated to Lorenz and Crowe in relation to their record of satisfactory performance and commensurate level of training under ZMA 3120.21P.

Regarding Oscar, the unidentified white female, and Carlos, the plaintiff is

11

uncertain of the circumstances surrounding their employment and treatment by the FAA.  <u>See</u> Plaintiff's Depo. (pages 232-34 as to Carlos; pages 217-31 as to Oscar and the unidentified female).

The plaintiff has failed to offer any evidence of DATCS employees who twice failed to successfully complete a required Performance Verification evaluation and did not have their training terminated.  Order ZMA 3120.21), Chapter 2, Section1, does not provide for a Training Review Process or for Remedial Training.  The plaintiff has failed to establish that the defendant treated similarly situated employees – not of his race – more favorably than he was treated.  <u>See</u>, <u>Brown</u>, 171 F.3d at 1368; <u>Horn v. United Parcel Services, Inc.</u>, 433 Fed. App'x 788, 794 (11th Cir. 2011) (affirming summary judgment in favor of the employer and finding that the district court did not err by rejecting Horn's comparators on the basis of material differences in rank, responsibilities, and supervisors).  The plaintiff's failure to pass D-Side Simulation Training set him apart from all asserted comparators.  Because there are no similarly situated employees who were treated more favorably than he was treated, the plaintiff cannot establish a prima facie case of wrongful discrimination.  The defendant is entitled to summary judgment.

> 2.    <u>No Probative Evidence of Pretext re: Race or National Origin Discrimination</u>

Even if the plaintiff established a prima facie claim of discrimination, he failed to satisfy his burden to show that the non-discriminatory reasons proffered by the defendant are pretext for wrongful discrimination.

Under the <u>McDonnell Douglas</u> framework, if the plaintiff establishes a prima facie

case of discrimination, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for its actions.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see E.E.O.C. v. Joe's Stone Crabs, 296 F.3d 1265, 1272 (11th Cir. 2002).  If the employer does so, the presumption of discrimination is rebutted, and the burden of production shifts back to the plaintiff to offer evidence that the employer's alleged reason was pretext for unlawful discrimination.  Joe's Stone Crabs, 296 F.3d at 1273.  "The employer's burden under the second prong of the test is 'exceedingly light' and merely requires that the employer proffer a legitimate nondiscriminatory reason." Bradley v. Pfizer, Inc., 440 F. App'x 805,  (11th Cir. Sept. 9, 2011) (quoting Meeks v. Computer Assocs. Intern., 15 F.3d 1013, 1019 (11th Cir. 1994)).  To meet the "burden under the third part of the test, [a] plaintiff must disprove all legitimate nondiscriminatory reasons proffered by the employer." Bradley, 2011 WL 3962824, at *2 (citing Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007)).  "If the non-moving party fails to make a sufficient showing as to any essential element of his case on which he has a burden of proof, the moving party is entitled to summary judgment as a matter of law." Bradley, 440 Fed. App'x at 807 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  "'Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record.'" Id. (quoting Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)).

    If "'the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was

based on erroneous facts.'" Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 Fed. App'x 243, 247 (11th Cir. 2011) (quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (2000)).  An employer's "reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Saunders v. Emory Healthcare, Inc., 360 F. App'x 110, 114 (11th Cir. 2010) (citation omitted); Tarmas v. Sec'y of Navy, 433 F. App'x 754, 761 (11th Cir. 2011).  Federal courts do not sit "'as a super-personnel department that reexamine an entity's business decisions.'" Porter v. Am. Cast Iron Pipe Co., 427 F. App'x 734, 736 (11th Cir. 2011) (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

The defendant terminated the plaintiff's training after the plaintiff twice failed to successfully complete a required Performance Verification evaluation. The record shows that the defendant had legitimate non-discriminatory reasons for terminating the plaintiff's training. The plaintiff relies upon Chapter 2, Section 1.2(d)(4)(B) of ZMA 3120.21P, the National Order (JO 3120.4L), and the CBA to show that the defendant's non-discriminatory reasons are pretext.  These provisions support the defendant's position.

Chapter 2, Section 1.2(d)(4)(B) of ZMA 3120.21P does not preclude termination for a failed retake and Section 1 does not provide for a Training Review Process or for Remedial Training.  Chapter 2, Section 1(B) of ZMA 3120.21P provides that "[i]n the event of a failed retake evaluation, the [Training Administrator] shall review the noted error(s), verify continuity of instruction, and ensure that the error conforms to evaluation and instructional guidelines."   In his deposition, Mike Walborn, the Training Administrator, testified that a second failure mandates that training be suspended. Walborn Depo. (DE# 21-1, pages 62-72; transcript pages 61-71).

14

Section 2 of Article 61 of the CBA affords the agency discretion by use of the word "may."  Section 2 provides:

> Developmental employees who are unsuccessful in training and have complete[d] their probationary period *may* be given an opportunity at a lower level facility *if* a vacancy exists.  These employees will be provided a list of up to five (5) facilities in which the employee may select for reassignment. En route developmentals fitting the criteria above will attend the Academy for terminal training. (emphasis added).

In his deposition, Eric Fox, the Air Traffic Manager who terminated the plaintiff's employment, testified that he exercised his discretion and did not reassign the plaintiff because the plaintiff "did not show the skill set and his abilities in my opinion that would make him successful at another facility."  Fox Depo. (DE# 37-2, pages 101-103, and 39-52; transcript pages 216-18, and 154-67).

The plaintiff's unsupported conclusory assertion that his assignment to and training in the Transportation Management Unit ("TMU") was tantamount to official recognition that he was qualified as a certified professional controller[1] ignores Mike Walborn's deposition testimony that explained that "[t]o work in TMU you have to be a certified professional controller.  The position that [the plaintiff] worked was not a control position.... [TMU] was a place for him to be so he can work doing clerical type work that doesn't require any

---

[1]The plaintiff disputes the clerical nature of his work in TMU with his self-serving, unsupported declaration that he was a "certified professional controller working in TMU" (DE#28-1, paragraph 7) and with a Chronology of Training (DE# 20, Ex. 4). The non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises, or conjectures. <u>See</u>, <u>Celotex v. Catrett</u>, 477 U.S. 317, 322- 323 (1986). "[U]nsupported, self-serving statements of the party opposing summary judgment are insufficient to avoid summary judgment."  <u>Perlman v. U.S.</u>, 2002 WL 575788, *4 (S.D. Fla. 2002)(quoting <u>Penalty Kick Mgmt. v. Coca-Cola, Co.</u>, 164 F. Supp. 2d 1376, 1378 ( N.D. Ga. 2001) (citing <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705, 714 (11th Cir. 1984)).

control action."   Walborn Depo. (DE# 21-1, pages 79-80; transcript pages 78-79). According to Mr. Walborn, the plaintiff's position in TMU was "strictly clerical."   Id.

The evidence reveals that the FAA policy, rules and regulations created differing levels of training for developmental-ATCSs which legitimately provided management with differing disposition options based up successful and/or unsuccessful progress by developmental trainees.[2]   The CBA expressly provided that "the Agency determines individual training methods and needs."   "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."   Holifield, 115 F.3d at 1565.

The plaintiff has failed to show that the defendant's reasons for its decisions were false and that discrimination was the true motivation.   See, Bentley, 2011 WL 5119522, at. *3 (affirming summary judgment for defendant because plaintiff "did not show that [defendant's] legitimate reasons for firing her – [i.e.] fraud and dishonesty and violating the leave policy – were a pretext for the unlawful discrimination" ).   Here, even if the plaintiff established a prima facie claim of discrimination, which he did not, he failed to submit evidence to rebut the defendant's legitimate and non-discriminatory reasons.   See. Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836 (11th Cir. 2000)(affirming summary judgment in favor of the defendant because the plaintiff failed to present evidence demonstrating that the defendant's proffered evidence was pretext).   The defendant is

---

[2]The plaintiff argues that the CBA and regulations did not authorize the defendant to suspend his training or terminate him for failing the area of Separation test twice.  The issue presents a question of law that is appropriate for resolution on a motion for summary judgment.  The Court finds that the CBA and applicable regulations authorized the defendant to take the employment action it took after the plaintiff failed the area of Separation test twice.

entitled to summary judgment.

CONCLUSION

The plaintiff has failed to satisfy the third  requirement to establish a prima facie claim of discrimination.  He has failed to show that his employer treated similarly situated employees outside of his protected class more favorably than he was treated.  The plaintiff has also failed to present evidence to show that the employer's non-discriminatory reasons for suspending training and terminating the plaintiff were pretext or not worthy of credence. Accordingly, the defendant's motion for summary judgment is granted.

DONE AND ORDERED in Miami, Florida, this 26th  day of April, 2013.


JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE


Copies provided to:
All counsel of record